**Roger M. Simpson, Plaintiff-Appellee, v. Compagnie Nationale Air France, a Corporation Doing Business as Air France, Defendant-Appellant.**

Gen. No. 51,939.

First District.

May 22, 1968.

GOLDENHERSH, J., dissenting.

Harvey Wienke, James H. DeVries, James H. Ryan, and McBride, Baker, Wienke & Schlosser, of Chicago, for appellant.

James H. McFarland, of Chicago (Ralph S. McFarland, of counsel), for appellee.

45

EBERSPACHER, P. J.

Defendant, Compagnie Nationale Air France, a corporation doing business as Air France, appeals from the judgment of The Municipal Court of Chicago, First Municipal District of the Circuit Court of Cook County, entered after trial without a jury, in the amount of $1,241.

In his complaint, plaintiff alleged that on January 24, 1963, he purchased air transportation on defendant's airline for two persons from Rome, Italy to Chicago, Illinois via Paris, France, through Elizabeth H. Larkin Travel Service, Inc., defendant's authorized agent, through whom it advertised and sold its services; that the tickets were purchased at a cost of $1,341.40, that on February 21, 1963, plaintiff cancelled the reservations, and according to the custom in the travel industry, and to defendant's express undertakings and representations, plaintiff became entitled to a refund of the amount paid; that he has repeatedly demanded repayment but defendant's agents have wilfully and vexatiously refused to pay him the sum due.

In its answer, defendant denied that the Elizabeth H. Larkin Travel Service, Inc. was authorized to act as its agent in any way, or to bind it by any contract, other than by issuing an official ticket, and denied that it ever advertised to the contrary; denied that plaintiff purchased air transportation as alleged in the complaint; denied that the Elizabeth H. Larkin Travel Service, Inc. was authorized to act for it in any way other than in the manner aforesaid; denied that any accommodations were cancelled; denied that plaintiff ever had reservations or tickets for the trip alleged; denied any express undertakings or representations that it would pay the sum referred to; denied that any custom exists in the travel industry which would entitle plaintiff to a refund, and denied that there was any vexatious refusal to pay the sums demanded.

46

In a separate and additional defense, defendant alleged that the Elizabeth H. Larkin Travel Service, Inc. was at all times acting as the agent of the plaintiff, and not as the agent of the defendant.

The plaintiff testified that in January of 1963, he requested Elizabeth Larkin, of the Elizabeth Larkin Travel Agency, to plan a trip to Europe for his wife and himself. He had engaged her in connection with prior trips, and was satisfied with her services. On January 24, 1963, at the first planning session, after reviewing the proposed plans, Mrs. Larkin requested that he pay the full cost of the planned trip in advance, because "accommodations and transportation would be in such demand at the very time of their trip, which was at Easter time, that only by putting cash on the line, so to speak, could he be assured of the desired reservations." When plaintiff questioned the necessity of the prepayment, Mrs. Larkin assured him that she was acting in his best interests by sending the money along with the request for transportation and reservations. Plaintiff issued his check to the Elizabeth H. Larkin Travel Service in the amount of $3,368.38, the check is in evidence, and the endorsement shows it to have been deposited to the account of the Elizabeth Larkin Travel Service.

Mrs. Larkin prepared, and gave plaintiff a detailed itinerary commencing with sailing to Gibraltar on the R.M.S. Mauretania on March 28, 1963, and terminating with the following: "April 17, 1963—Fly home to O'Hare via Air France."

In February, 1963, plaintiff became ill and was hospitalized for a period of time. It appeared that he would not have sufficiently recovered to make the trip as planned, so he advised Mrs. Larkin that it would be necessary to cancel the trip, and she promised him a refund.

Repeated telephone calls were made to the office of the travel agency resulting in promises that the refund

47

check would be forthcoming, but no check was ever sent. In response to one telephone call, plaintiff was advised that the office of the agency was closed, that an administrator "had taken over" and plaintiff was then advised that Mrs. Larkin had filed a voluntary petition in bankruptcy.

On May 2, 1963, plaintiff wrote the defendant advising it of the occurrence, and requesting a refund in the amount of the cost of first-class air transportation from Rome to Paris, and from Paris to Chicago. Defendant refused to make payment, and this suit was filed.

Other than the flight from Paris to Chicago, the only air transportation included in the proposed itinerary was a flight from Rome to Paris on April 12, 1963. Plaintiff testified that Larkin scheduled his flight on Air France on both the flights from Rome to Paris on April 12 and Paris to Chicago on April 17; no airline is named in the itinerary for the flight on April 12th. Provision is made for transportation by private car to the Rome airport shortly after luncheon to board a flight for Paris leaving late p. m. and arriving in Paris approximately 5:00 o'clock p. m. The record shows that defendant's only scheduled flight on that day from Rome to Paris was scheduled to leave Rome at 8:35 p. m. and arrive in Paris at 10:30 p. m. Defendant's Chicago district manager testified that he had examined defendant's records and no tickets were issued in plaintiff's name during January, February or March 1963.

Exhibits, offered and admitted in evidence by stipulation of the parties, show that the Elizabeth H. Larkin Travel Service, Inc., hereafter referred to as Larkin, on June 12, 1961, entered into a passenger sales agency agreement with the International Air Transport Association, and it is stipulated that defendant had issued a "Certificate of Appointment" authorizing Larkin to represent it "in promoting and selling air transportation in

48

accordance with and subject to all of the terms and conditions of the I.A.T.A. Sales Agency Agreement." The pertinent provisions of the I.A.T.A. agreement are (a) The agent shall request reservations only when he has had a request therefor, and if required by the carrier, a deposit has been paid, (b) the agent may represent himself as "Agent" or "Booking Agent" but not as "General Agent" and may not use the designations "Airline Ticket Office" or "Consolidated Ticket Office," (c) the agent is to display advertising material supplied by the carrier, (d) moneys collected for transportation sold are the property of the carrier and shall be so retained by the agent until satisfactory accounting is made therefor, (e) the carrier may, at its option, furnish agent with tickets and exchange vouchers, (f) prior to issuance of a ticket, agent is to secure confirmation from the carrier that a definite reservation has been made for a particular flight except that "open date" tickets may be issued if marked to indicate that no specific accommodation has been reserved.

By stipulation of the parties, there was admitted into evidence a copy of a proof of claim filed by plaintiff in the matter of the bankruptcy of Elizabeth H. Larkin Travel Service, Inc., stating that he had prepaid for travel fares and accommodations in the amount of $3,368.38, had received a refund from Cunard Steamship Company in the amount of $1,222.00, leaving a net balance of $2,146.38. This we consider to be of comparatively insignificant evidentiary value.

Plaintiff testified that all of his flights prior to the dates upon which the proposed flights were to be made, were first class. The judgment entered is in the amount of the published rate for first-class accommodations for two persons from Rome to Chicago.

As grounds for reversal, defendant contends that Larkin was a special agent, that plaintiff dealt with it at

49

his peril, and is bound to know the extent of its authority and the evidence shows the travel agent was acting as plaintiff's agent, not defendant's, and defendant is not bound by its acts.

Plaintiff argues that Larkin was acting within its apparent authority, and defendant is liable for the acts of its agent within its actual or apparent authority.

There is no question that the I.A.T.A. agreement conferred upon Larkin the authority to agree on defendant's behalf to furnish transportation via Air France. In fact the principal purpose of the certificate of appointment was to give her that authority, with the expectation that she would use it for the profit of this defendant. By the provision which we have heretofore referred to as "(d—moneys collected for transportation sold are the property of the carrier and shall be so retained by the agent until satisfactory accounting is made therefor)," Larkin unquestionably had authority to collect money from prospective Air France passengers who had agreed with her to use Air France, and such money as she collected for Air France flights immediately became the property of Air France, even though the agreement permitted her to retain custody of it until an accounting was made. Even though she had authority to issue "open date" tickets, the issuance of any ticket is not by the provisions of the agreement, a condition upon which money collected for Air France flights, became the property of Air France.

Both plaintiff's testimony and the itinerary are to the effect that Larkin and plaintiff had a complete meeting of the minds, Larkin on behalf of Air France, that Air France was to furnish transport from Paris to Chicago and that portion of the expense of the entire planned trip was included in the check plaintiff gave Larkin. There is absolutely nothing in the record to contradict the evidence that Larkin sold plaintiff passage on Air France from Paris to Chicago for April 17, and

that Larkin had authority to do so. The instant the check was honored, a check being only conditional payment, that part of the proceeds covering the flight from Paris to Chicago, stipulated by the parties to be $1,098.00, became the property of Air France, for transportation which they did not furnish. While it is true that Larkin did not issue a ticket to plaintiff, there is nothing in the agreement that makes the issuance of such ticket a condition of her collecting money from prospective passengers, for defendant, nor is the issuance of such ticket a condition to such money as she collects on behalf of Air France, immediately becoming the property of Air France. As a result it makes no difference whether she issued a ticket, placed a reservation with Air France, or requested Air France to issue a ticket. Likewise, the fact that the I.A.T.A. agreement provided "that monies are deemed to be due the carrier when the ticket or exchange order is issued" is of no consequence; Larkin had the money which was the property of Air France, but she was not as yet obligated to pay it to Air France; she and defendant had agreed that she was to keep it for defendant, not for plaintiff.

The provision that "all moneys collected by the Agent for transportation . . . are the property of the carrier and shall be retained by the Agent as property of the carrier until satisfactorily accounted for to the carrier" was obviously made for the carrier's protection against its agent, in order that the carrier might claim a priority on any funds in the hands of its agent, as against creditors of the agent. We are not here concerned with the fact that Air France has not seen fit to exercise its priority on such funds in the bankrupt estate of their agent. They of course would lose little by failing to make such a claim, since they did not furnish the transportation for which plaintiff paid, if they could disclaim the acts of their agent. We are not here involved with the proposition that a third party dealing with a special

51

agent is bound at his peril to know the extent of the agent's authority; our concern is with the authority the special agent had and whether her acts were within the extent of that authority. We find that she had authority from Air France to sell passage on Air France, that she sold passage on Air France from Paris to Chicago, that she had authority to collect the fare for such passage, for her principal Air France, that she did collect such fare for such principal, and that upon collecting money for such fare the money became the property of Air France.

██ With reference to the flight from Rome to Paris, which plaintiff contends was also to be via Air France, and for which he also recovered below, we consider the situation differently. Despite his testimony that Air France was intended for that flight, the itinerary does not designate Air France as the carrier from Rome to Paris; in fact, it designates a flight arriving in Paris at approximately 5:00 p. m. Defendant has presented evidence that on April 12 its only scheduled flight from Rome to Paris by Air France departed Rome at 8:35 p. m. arriving in Paris at 10:30 p. m. (Defendant did not offer any proof that there were no scheduled flights from Paris to Chicago on April 17.) With the record in this state we cannot say that plaintiff has proven by a preponderance of the evidence that there was a meeting of the minds on the carrier to be used from Rome to Paris and that the payment included an Air France flight from Rome to Paris. Having received the money without any commitment that Air France would furnish air transport from Rome to Paris, the portion of the money for such flight did not become the property of Air France, because the preponderance of the evidence does not show that such portion of the money was collected for transportation on Air France.

The judgment of the Municipal Court of Chicago, First Municipal District of Cook County is affirmed as to the

amount of $1,098 and costs, and is reversed as to the remainder.

Affirmed in part, reversed in part.

MORAN, J., concurs.

GOLDENHERSH, J., dissents.

GOLDENHERSH, J., dissenting.
I respectfully dissent from the majority opinion and would reverse the judgment.

The record discloses that Larkin was a dual agent, employed by, and acting for, both of the parties.

There is no question that the I.A.T.A. agreement conferred upon Larkin the authority to collect funds and issue tickets in defendant's behalf. It is equally clear that it was, at the same time, acting as plaintiff's agent, for the purpose of procuring hotel and travel accommodations. Larkin's relationship with both parties was one which is usual and customary in the business in which it was engaged, and only the conversion of the funds distinguishes the transaction from countless others. The precise issue for determination here is the point at which the funds ceased to be the property of plaintiff, and ownership passed to defendant.

The question is somewhat similar to that discussed in the caveat to section 313, Restatement of Agency 2d, and in an article which appears at 64 Harvard Law Review 431, entitled "Embezzlement by Agent of Two Principals: Contribution?" It is also analogous to the situation presented in Bloxom v. Deitchler, 175 Wash 431, 27 P2d 720, in which the court held that an innocent party who entrusts money to the agent of himself and another, with instructions to pay the funds to the other principal, must stand the loss caused by agent's larceny of the money, unless it had been paid to, and stolen from the other principal.

As stated in the majority opinion, the I.A.T.A. agreement provides that monies collected by the agent for transportation sold are the property of the carrier and are to be so retained by the agent until satisfactory accounting is made therefor. The agreement further provides that the agent is to account for and remit to the carrier monies due it for transportation sold not less than once each month. Monies are deemed to be due the carrier when a ticket is issued, and it is this act of issuing the ticket that transfers ownership of the funds from the client of the travel agent to the carrier.

In my opinion, at the time of the Larkin defalcation, no action had been taken which could effect transfer of ownership of the funds from plaintiff to defendant; the money, when stolen, was plaintiff's property, and he, and not defendant, must bear the loss.